MABEL ROWAN *v.* BOARD OF EDUCATION OF LOGAN.
COUNTY *et al.*

(No. 9396)

LON E. BROWNING *v.* BOARD OF EDUCATION OF LOGAN
COUNTY *et al.*

(No. 9405)

VIDA LEE BROWNING *v.* BOARD OF EDUCATION OF LOGAN
COUNTY *et al.*

(No. 9406)

Submitted February 9, 1943. Decided March 2, 1943.

*Lee, Blessing & Steed,* for relators.
*R. Paul Holland,* for respondents.

Fox, JUDGE:

These are original jurisdiction proceedings in mandamus. The relators hold contracts as teachers in the public schools of Logan County, and respondents are the Board of Education and superintendent of schools of that county. The rights of the relators are each dependent upon the effect we give to certain actions of the board of education of said county, taken on May 12, 1942, and later on June 29th of the same year. The complaint of the relators is that they were unlawfully deprived of their legal rights in being assigned to certain schools by the board's action on June 29th, when, as they contend, they were legally assigned to other schools under the action of the board taken at its meeting on May 12th.

On May 12, 1942, the Board of Education of Logan County was composed of Frank White, P. C. Dingess, Louden H. White, R. L. Shelton and C. L. Williams, and Paul C. Winters was county superintendent of schools. At a meeting held on that day, the superintendent submitted to the board his recommendation for the assignment of teachers and principals for the school year 1942-43. Had that recommendation been adopted, Mabel Rowan would have been assigned as principal in the Stollings School. What the assignment of relators, Lon E. Browning and Vida Lee Browning, would have been is not stressed; nor does the record show the relationship, if any, between these parties, and reference thereto in the briefs of respondents cannot be considered. The recommendation aforesaid submitted to the board by Winters as superintendent was rejected, and thereupon, at the same meeting, charges were filed against Winters, as superintendent, and by a vote of three to two he was suspended as such, and Lon E. Browning was then selected as acting superintendent by the vote of Louden H. White, R. L. Shelton and C. L. Williams. Browning, after taking an oath as acting superintendent, and assuming to act as such, then made his recommendation to the board as to the assignment or placement of teachers and principals for the school year 1942-43, which was different from that submitted to the

board by Winters, which recommendation was approved by the three members of the board who selected him as superintendent, the other two members, Frank White and P. C. Dingess, voting in the negative. Under the Browning recommendation, Mabel Rowan was assigned as principal of the Logan Central School; Lon E. Browning as principal of the Omar Junior High School and Elementary School; and Vida Lee Browning as principal of the Peach Creek Elementary School. It appears from the evidence that the actions of the board as to the filing of charges against Winters, the selection of Browning as acting superintendent, and the acceptance of the Browning recommendation as to the assignment of principals and teachers, including himself, had been agreed upon several days prior to the meeting of May 12th. While the minutes of this meeting were not signed, we do not treat this omission as of any importance.

Shortly before the meeting of May 12th, to-wit, on May 2nd, impeachment charges were filed in the Circuit Court of Logan County against Louden H. White, R. L. Shelton and C. L. Williams, and under such charges, they were, on May 21, 1942, removed as members of the board. This Court refused to suspend the action of the Circuit Court in removing White and Shelton, but did suspend such action with respect to the removal of Williams, and afterwards, on September 22, 1942, affirmed the action of the Circuit Court in the removal of White and Shelton, and reversed such action as to the removal of Williams.

While these matters were pending, a suit in equity was instituted in the Circuit Court of Logan County, by Winters and others, and against the Board of Education and certain individual members thereof and relator, Lon E. Browning, in which an injunction was awarded by said court, and made effective on May 19, 1942, by which Lon E. Browning was "enjoined and restrained from proceeding further to act as such acting county superintendent of schools of the county of Logan"; and the Board of Education of said county and Louden H. White, R. L. Shelton and C. L. Williams, members of said board, were "enjoined and

restrained from attempting in any manner whatsoever to complete the hiring and placement of teachers in the school system of Logan County, West Virginia, for the school year 1942 and 1943 until such time as the teachers and the placement thereof has been regularly and properly approved and recommended by a duly appointed and qualified County Superintendent of Schools of Logan County, West Virginia." No such injunction was in effect at the date of the acts complained of, and cannot, therefore, be considered as having any bearing thereon. In the meantime, an appointment to take the place of either Louden H. White or R. L. Shelton on the board was made, and on June 23, 1942, there was a meeting of the board at which the charges against Winters were dismissed and he was restored to his position as superintendent. On June 29th, following, the board, assuming to treat the prior action taken on May 12th, as void and of no effect, proceeded to assign principals and teachers for the coming school year. This assignment was made by Winters, as superintendent, and approved by the board. Mabel Rowan was assigned, not to the Stollings School, but to the principalship of the J. B. Ellis School, commonly known as a four-room school, employing four teachers, the result of which was that her salary was materially reduced. Lon E. Browning was assigned as principal of the Earling Elementary School, a six-room school, and his salary reduced; Vida Lee Browning was assigned as a second-grade teacher in the Earling Elementary School, and her salary likewise reduced. As to the two last named relators, other allegations are made with respect to the difficulty in reaching their places of employment, and other matters tending to show that the positions to which they were finally assigned were much less desirable than those assigned to them under the board's order of May 12th. No particular explanation is given as to why the assignments as to Lon E. Browning and Vida Lee Browning were changed, but it is attempted to justify the change as to Mabel Rowan by the statement that the Logan Central High School was and is now a twelve-room school,

requiring high-class supervision, and the contention is made that the relator is a nervous woman; inefficient and unable to discharge the duties of such position; and that the change in her assignment was in the interest of school administration in said county. On this point, we are of the opinion that the evidence fails to disclose such justification for the board's action. True, there is some evidence which, as an original proposition, might have justified the selection of Mabel Rowan for a less responsible position than that of principal of the Logan Central School; but there is no explanation of why she was recommended for the position of principal of an important school at Stollings in May, 1942, and then within six weeks discovered to be capable only of teaching in and supervising a much smaller school.

The decision in these cases must rest upon whether the action of the board of education in rejecting Winters' recommendation on May 12, 1942, and substituting that of Browning was a legal action; and the further question of the rights, if any, which accrued to the relators thereunder. It must be admitted that the meeting of the board was regular; that the majority of the board had the right to control its decision; and that they did so in a regular way. It cannot be doubted that the board had the legal right to file the charges against Winters and to suspend him, and having done so, we think that by custom and usage, it had the right to make the selection of someone as acting superintendent. In making such selection, however, it was required to select someone possessing the educational qualifications and experience necessary for that position, and the contention that Lon E. Browning did not possess the necessary educational qualifications not being denied, his selection must be treated as an improper and illegal act. However, Browning assuming to act as superintendent, was at least a *de facto* officer; and when he recommended Mabel Rowan and Vida Lee Browning to specific assignments in the schools and such recommendation was approved by the board, a regular assignment as to them was thereby made. The injunction referred to

above not becoming effective for one week thereafter, cannot be treated as having any effect upon the legal standing of the two relators in respect to the positions to which they were so assigned by the board.

A different situation presents itself with respect to the rights of Lon E. Browning. As stated above, his appointment as acting county superintendent was illegal, but he nevertheless became a *de facto* officer, and his acts as such are, generally speaking, valid as to persons other than himself. Such acts are not valid in any matter as to which he has a personal interest. In *Building & Loan Association v. Sohn,* 54 W. Va. 101, 46 S. E. 222, a case in which an officeholder had forfeited his office by accepting another incompatible position, and thereafter performed the functions of the forfeited office, it was held that he was a *de facto* officer, and that his acts, done before his removal from such office, were valid as to persons other than himself, and in the discussion of the case, the Court said: "Such acts will be sustained in any proceeding, collateral or direct, in the interest of third parties or the public. They are only invalid as against the public, and as to the *de facto* officer himself. He cannot set them up in his own favor as against the public." An excerpt from the case of *Rodman* v. *Harcourt,* 4 B. Mon. (Ky.), 224, is quoted as follows: "The act of an officer, *de facto,* where it is for his own benefit, is void, because he shall not take advantage of his own want of title which he must be cognizant of; but where it is for the benefit of strangers or the public, who are presumed to be ignorant of such defect of title, it is good." Many other cases are cited in the *Sohn* case to sustain the proposition stated. Later, in the case of *Privett* v. *Board of Education,* 104 W. Va. 35, 138 S. E. 461, the same holding is made. We think this rule applies to all situations where the acts of a *de facto* officer are considered. In 43 Am. Juris., 240-1, it is stated: "The acts of a de facto officer as far as he himself is concerned are void." And it is further stated:

"The general rule is that the acts of a de facto officer are valid as to third persons and the public

until his title to office is adjudged insufficient, and such officer's authority may not be collaterally attacked or inquired into by third persons affected. The practical effect of the rule is that there is no difference between the acts of de facto and de jure officers so far as the public and third persons are concerned. The principle is placed on the high ground of public policy, and for the protection of those having official business to transact, and to prevent a failure of public justice. Third persons, from the nature of the case, cannot always investigate the right of one assuming to hold an important office. They have a right to assume that officials apparently qualified and in office are legally such, even though a contest is pending. Furthermore, the ° de facto officer is estopped from taking advantage of his own want of title."

This quotation states both the reason for the rule and its limitations. See also, Throop on Public Officers, sec. 649; Mechem's Public Offices and Officers, sec. 331. In view of these authorities, we are of the opinion that the relator, Lon. E. Browning, could not, by his own act as a *de facto* officer, create any legal right in himself which would warrant this Court in affording him the relief he seeks.

However, it is argued that, even if the rule stated above be correct, Browning's assignment as principal of the Omar Junior High and Elementary School was not made by him, but by the Board of Education. There are two subsections of section 10, article 8, Chapter 33, Acts of the Legislature of 1941, which have some bearing upon this proposition. These are sub-sections two and three, and they read:

"The county superintendent shall: * * *

(2) Nominate all teachers, principals, and as-. sistant superintendents to be employed; in case the board of education refuses to appoint any or all of the persons nominated, the superintendent shall nominate others and submit the same to the board of education at such time as the board may

direct, but no teacher, or principal, or assistant superintendent, shall be employed except on the nomination of the county superintendent;

(3) Assign, transfer, suspend, promote, or dismiss teachers and all other school employees of the district, subject only to the approval of the board; * * *."

If we treat Browning as having been nominated as a principal under sub-section 2, then it is clear that his nomination as such was absolutely necessary to his securing the position because the board could not select him for that position unless he was nominated therefor by the county superintendent. On the other hand, if we treat him as having been assigned to the position of principal under sub-section 3, his act in appointing himself was absolute, except that it was subject to the approval of the board. He had the absolute right to make these assignments, but to make them effective the board had to approve them. The board could not have approved such assignments without action on the part of the county superintendent. Whichever of the two sections we apply to the situation before us, and from whatever viewpoint we proceed, we are driven to the conclusion that action on the part of the county superintendent was necessary to put Browning in a situation where he could be selected for the principalship of the Omar schools. This being true, we hold that in recommending himself for this position, he performed an act which was indispensable to his appointment or assignment, and that the action of the board here in employing him in the first instance, or in approving his assignment in the second instance, would not have the effect of erasing Browning's participation therein.

In *County Court* v. *Nicely*, 121 W. Va. 767, 6 S. E. 2d 485, we held that a county superintendent of schools was not a county officer, and removable as such by the circuit court under the provisions of Code, 6-6-7. That was the sole question decided in that case. The suggestion is made that, not being a county officer, the doctrine relating to *de facto* officers does not apply to the relator, Lon E.

Browning. To this we reply that, under the statute now in force, Acts 1941, Chapter 33, he is armed with governmental power, namely, to nominate teachers and principals, and to assign, transfer, suspend, promote or dismiss teachers and other school employees. This makes him a public officer to whom we can apply the doctrine relating to *de facto* officials.

- What we have said above will operate to deny the writ as to Lon E. Browning. However, the question remains as to the power of the Board of Education to act in the assignment of teachers on June 29, 1942, so far as its action related to Mabel Rowan and Vida Lee Browning. We think it clear that the board had a right to change the assignment of principals and teachers in cases demanding some regulatory proceedings, and in cases of emergencies. We are committed to the doctrine that "contracts for teaching schools are entered into subject to the exercise of the power conferred on the county superintendent of schools by Acts of 1933, *supra*. That power, however, may be used only for regulation and in emergencies. Even then, it must be exercised in a reasonable manner. The best interests of the schools must be intended. Arbitrary or capricious use of the power will not be tolerated." *Neal* v. *Board of Education,* 116 W. Va. 435, 181 S. E. 541. That was a case where Neal was removed from one school to another, and he protested against the change. This same principle was followed in *White* v. *Board of Education,* 117 W. Va. 114, 184 S. E. 264. There a number of changes were made and they were condemned, and a mandamus issued nullifying its actions. We do not think the situation in this case is materially different from those existing in the two cases cited above. The action of the board taken on June 29, 1942, cannot be sustained either under the theory of regulation or emergency, and can only be sustained on the theory that the action of the board taken at its meeting on May 12, 1942, was void; and as to the relators Mabel Rowan and Vida Lee Browning we are not prepared to so hold.

We do not think we reach the question of the right of

Lon E. Browning to hold the principalship of the Omar Junior High and Elementary Schools because of his alleged lack of educational qualifications. Our failure to pass upon this question should not be construed as supporting the theory that a high school principal is not required to possess the educational qualifications prescribed by the statute, or by rules and regulations legally adopted by the State Board of Education.

An opinion in these cases was handed down on the 6th day of October, 1942, and an order was entered on that day granting to each of the relators the relief prayed for. Later, on the 7th day of December, 1942, upon petition of the respondents, we granted a rehearing as to the right of Lon E. Browning to the relief prayed for, suspended said order as to him only, but refused such rehearing or suspension as to the relators, Mabel Rowan and Vida Lee Browning. The order entered on October 6, 1942, in so far as it relates to Mabel Rowan and Vida Lee Browning, will stand as the final order of the Court; but an order will now be entered denying the relator Lon E. Browning the relief prayed for in his petition, and costs will be assessed against him in favor of the respondents.

*Writ awarded as to Mabel Rowan and Vida Lee Browning; denied as to Lon E. Browning.*